

**ORDERED in the Southern District of Florida on January 23, 2015.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:

ARTURO OBREGON,                              Case No. 07-17465-BKC-AJC

     Debtor.
_____/

### ORDER CONDITIONALLY GRANTING TRUSTEE'S
### MOTION TO DISMISS CASE [ECF NO. 169]

THIS CAUSE came before the Court for hearing on the 18th day of November, 2014 at 9:00 a.m., upon Trustee's *Motion to Dismiss Case and Certificate of Service* ("Motion") [ECF No. 169]. The Court having considered the pleadings, the applicable case law, and the history of this case, grants the Trustee's Motion, subject to the conditions set forth herein.

### I. Procedural Background

On September 12, 2007, Debtor Arturo A. Obregon filed for relief under Chapter 13 of the Bankruptcy Code. Based on the Debtor's schedules A through D, the Debtor has $26,300.00 of non-exempt property.

On June 23, 2008, after the January 28, 2008 proof of claims bar date and the March 10, 2008 government claims bar date, the Debtor proposed his third amended Chapter 13 plan [ECF No. 81] which provided a total distribution of only $9,300.28 to general unsecured creditors instead of the $26,300.00 typically required by the "Best Interest of Creditors Test" as indicated by Debtor's non-exempt assets. However, the third amended plan further stated "[t]he Debtor will modify the Chapter 13 Plan to increase the amounts to be paid in to provide for a 100% distribution to allowed unsecured claims."

As a result of the language contained in the Debtor's third amended plan [which requires payment of 100% of all allowed unsecured claims], the Trustee recommended confirmation, thereby rendering Trustee's objection to exemptions [ECF No. 28][1] moot. On July 15, 2008, upon Trustee's recommendation, the Court entered an order confirming the Debtor's third amended plan. [ECF No. 83].

On October 13, 2011, more than three years after the Debtor's third amended plan was confirmed, Creditor Sallie Mae filed proof of claim number 15. On October 14, 2011, one day later, Sallie Mae also filed proofs of claim numbers 16 and 17. All three claims filed by Sallie Mae were for unsecured student loan debts.

On June 6, 2013, two years after Sallie Mae's claims were filed, the Debtor objected to the proofs of claim as being late filed. [ECF No. 162]. On July 24, 2013, the Court entered an order sustaining the Debtor's objections and disallowing Sallie Mae's claims. [ECF No. 164].

In the interim though, the Trustee made pro-rata disbursements to Sallie Mae totaling $2,871.27 pursuant to their proofs of claims.

---

[1] The Trustee's objection to Debtor's claim of exemptions alleges that the Debtor is over the legal limit and/or raising a question as to the amount of the claimed exemption [ECF No. 28].

On May 16, 2014, the Trustee filed her motion to dismiss [ECF No. 169] stating the Debtor had not paid into the confirmed plan sufficient funds to pay all of the allowed unsecured claims. As of the date of this order, the Trustee does not have sufficient funds to pay 100% of all allowed unsecured claims because $2,871.27 was paid to Sallie Mae prior to the Court's order disallowing Sallie Mae's proofs of claim numbers 15, 16, and 17. In order for the Debtor to comply with the language requiring him pay 100% of all allowed claims, the Debtor would need to remit to the Trustee $1,492.89 plus the Trustee's fee.

The Debtor suggests the Court order the Trustee or the Debtor to recover the funds paid to Sallie Mae or simply grant the Debtor a discharge on the basis of what the Debtor has already paid into the plan, as confirmed. However, the Court does not believe the Debtor's suggestions are viable remedies nor are they fair and equitable under the circumstances. The Court finds no basis to order the recovery of funds which were properly paid when they were paid, as payments made on allowed unsecured claims, and which were paid to a creditor holding a non-dischargeable debt. The Trustee was not at fault in this matter. The claims of Sallie Mae were for non-dischargeable debts so the Debtor has benefitted by the payments, and the Debtor has not persuaded the Court that the other unsecured creditors to whom Debtor promised 100% distribution should finance the payment of Debtor's non-dischargeable debt to Sallie Mae.

Had the Debtor immediately objected to the Sallie Mae claims, it is likely the objections would have been sustained on the grounds of laches; but, by waiting two years to object, the Debtor allowed for the payments to Sallie Mae to be made by the Trustee and, at this stage in the proceedings, it is not practical to try to put Humpty Dumpty back together again. The Court also does not believe it is fair or equitable to grant a discharge if the Debtor has not paid all the creditors what was promised under the confirmed plan.

## II. Discussion

### A. Allowance of a Proof of Claim

The Trustee properly disbursed funds to Sallie Mae prior to the Court order sustaining Debtor's objection and disallowing Sallie Mae's proofs of claims, because a proof of claim is deemed allowed unless objected to by a party in interest. Section 502(a) of the Bankruptcy Code states that a filed claim "is deemed allowed, unless a party in interest . . . objects." Under section 502(b)(9), a tardily filed claim may be disallowed if a timely objection to the proof of claim is filed. Section 502(b) states in pertinent part that:

> […] if such objection to claim is made, the court, after hearing, shall determine the amount of such claim . . . as of the date of filing the petition, and shall allow such claim in such amount, except to the extent that –
>
> (9) proof of such claim is not timely filed, . . . except that in a case under chapter 13, a claim of a government unit for a tax . . . .

11 U.S.C § 502(b)(9). The three proofs of claims filed by creditor Sallie Mae are deemed allowed claims, regardless of being tardily filed, and were required to be paid by the Trustee until the order sustaining Debtor's objection to claims was entered.

In the instant case, the Debtor's confirmed third amended plan states "[t]he Debtor will modify the Chapter 13 Plan to increase the amounts to be paid in to provide for a 100% distribution to allowed unsecured claims." After the confirmation order was entered, the Trustee began disbursing monies to all allowed claims, including the three claims filed by Sallie Mae. The Debtor then waited two years after Sallie Mae's claims were filed to file an objection. The Debtor's objection to claims [ECF No. 162] was sustained pursuant to 11 U.S.C. § 502(b)(9), as the claims were tardily filed, but the disbursements made by the Trustee to Sallie Mae prior to

the Debtor's objection to claim were properly made as the claims are deemed allowed until objected to.

**B. The Best Interest of Creditors Test – 11 U.S.C. § 1325(a)(4)**

But for the 100% language, the Debtor's plan may not have been confirmed by the Court because the Debtor's plan did not meet the "Best Interest of Creditors Test" found in 11 U.S.C. § 1325(a)(4). The "Best Interest of Creditors Test" which must be met to confirm a Chapter 13 plan requires that the plan return to unsecured claimants at least as much as those claimants would receive had the debtor filed liquidation bankruptcy under Chapter 7. 11 U.S.C. § 1325(a)(4). In the instant case, to meet the "Best Interest of Creditors Test" the Debtor would need to pay $26,300.00 to unsecured creditors, as that was the admitted value of the Debtor's non-exempt assets. The Debtor's third amended plan only proposed to pay general unsecured creditors $9,300.28 -- as that was what was represented to be enough to pay all unsecured claims. However, the Debtor's plan did provide that he would modify the plan to pay 100% distribution to all allowed unsecured claims. The Court confirmed Debtor's third modified plan, in part because Debtor promised to pay a 100% distribution to all allowed unsecured claims.

Pursuant to 11 U.S.C. § 1325(b)(1)(A), the Court may not approve the Debtor's plan over the objection of the Trustee unless "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim." 11 U.S.C. § 1325(b)(1)(A). Relying on the language in the third amended plan requiring Debtor to "provide for a 100% distribution to allowed unsecured claims", the Debtor must remit to the Trustee the remaining $1,492.89 plus Trustee's fee to receive a discharge under the confirmed plan, or the case will be dismissed without the entry of the Debtor's discharge.

**C. Effect of Confirmation – 11 U.S.C § 1327(a)**

The Debtor is bound by the terms of his confirmed Chapter 13 plan and therefore must complete the plan to receive a discharge. Section 1327(a) specifically states: "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C § 1327(a). The Debtor's plan states "[t]he Debtor will modify the Chapter 13 Plan to increase the amounts to be paid in to provide for a 100% distribution to allowed unsecured claims." The Court relied on this language to approve a plan that did not meet the "Best Interest of Creditors Test." It would be inequitable and unjust to hold that creditors are bound by the terms of the plan but the Debtor is not similarly bound.

The Debtor's failure to comply with a material term of the confirmed plan is grounds for dismissal pursuant to 11 U.S.C. §1307(c)(6). *In re Roberts*, 279 F.3d 91 (1st Cir. 2002). In the *Roberts* case, the First Circuit Court of Appeals found that the *Roberts* debtor did not complete the terms of the confirmed plan [to pay a ten percent dividend on all allowed unsecured claims] even though the debtor made all the monthly plan payments required by the plan. *Id*. at 93-4.

The *Roberts* court confirmed a five-year plan in which the debtor was required to make monthly payments of $474.00. *Id*. The *Roberts* plan was to pay the Internal Revenue Service (IRS) priority claim of $9,000 as well as a ten percent distribution to all allowed claims. *Id*. Several years later, the IRS submitted supplemental claims amounting to $15,000 by 1996 and more than $53,000 by 1999. *Id*. The bankruptcy court in the *Roberts* case found that the completion of the payment schedule prescribed in the confirmed plan did not relieve a debtor of the clear responsibility to comply with the other provisions in the plan, including the obligation to pay all priority tax claims and a ten percent dividend on allowed unsecured claims. *Id*. at 93.

As in the *Roberts* case, the Debtor in the instant case made all the requisite plan payments to the Trustee and argues that the completion of the payment schedule prescribed in the confirmed plan relieved the Debtor of his responsibility to comply with the other provisions in the plan, namely, to modify the plan to provide for 100% distribution to the unsecured creditors and to pay 100% of allowed unsecured claims. The Court is not persuaded by the Debtor's argument. The Debtor's plan was confirmed, even though it did not meet the "Best Interest of Creditors Test", because the confirmed plan stated the Debtor would "provide for a 100% distribution to allowed unsecured claims." It would be inequitable and unjust to allow the Debtor to abandon the language in his confirmed plan and grant a discharge when the terms of the confirmed plan have not been met.[2] Accordingly, it is

**ORDERED AND ADJUDGED** that the Trustee's Motion to Dismiss is GRANTED, subject to the Debtor remitting to the Trustee the remaining $1,492.89 plus Trustee's fee within thirty (30) days to receive a discharge. Failure to remit the remaining funds within thirty (30) days from entry of this Order will result in this case being dismissed without the entry of the Debtor's discharge.

###

Copies to:

Nancy K. Neidich, Esq.
Standing Chapter 13 Trustee
Jose Miceli, Esq., Staff Attorney
P.O. BOX 279806
MIRAMAR, FL 33027
(954) 443-4402

Trustee Nancy K. Neidich shall serve a conformed copy of this Order on all interested parties immediately upon receipt of same and shall file a certificate of service of same.

---

[2] Although the Debtor suggests the Court should order the Debtor or the Trustee to seek to recover the funds paid to Sallie Mae, the Court finds no basis to do so. Payments made to Sallie Mae were properly paid at the time they were paid and, more importantly, the payments made to Creditor Sallie Mae before the disallowance of its claims still benefitted the Debtor, as those payments were made on non-dischargeable student loans.